UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CAMILLE OBNAMIA,

    Plaintiff,

v.

                                            Civil Action 2:12-cv-58
                                            Magistrate Judge Elizabeth P. Deavers

ERIC K. SHINSEKI, SECRETARY,
UNITED STATES DEPARTMENT
OF VETERANS AFFAIRS,

    Defendant.

**OPINION AND ORDER**

    Plaintiff, Camille Obnamia, brings this action against her employer, the United States Department of Veterans Affairs, alleging disability discrimination and retaliation in violation of the Americans' with Disabilities Act ("ADA"), 42 U.S.C. §§ 1210 *et seq.* This matter is before the Court for consideration of Defendant's Motion for Summary Judgment. (ECF No. 15.) Plaintiff filed her Memorandum in Opposition to Defendant's Motion on April 4, 2013. (ECF No. 18.) Defendant filed its Reply on April 29, 2013. (ECF No. 22.) For the reasons that follow, Defendant's Motion for Summary Judgment is **GRANTED**.

**I.**

    Plaintiff was born with congenital bilateral hearing loss. (Obnamia Aff. ¶ 4, ECF No. 18-1.) As a result of her condition, Plaintiff experiences greater than 75% hearing loss in both ears, as well as tinnitus, which is an incessant ringing in the ears that is accompanied by dizziness and difficulty balancing. *Id.* at ¶¶ 5, 6. Background noises exacerbate tinnitus and make it more

difficult for Plaintiff to hear and discern speech. *Id.* at ¶¶ 4, 5. In addition, if Plaintiff is unable to see the outside world through a window, her tinnitus and difficulty balancing worsen. *Id.* at ¶ 6.

Plaintiff began to work as a traveling nurse for the Department of Veterans Affairs in 2004. From 2005 through 2009, Plaintiff submitted several requests to Defendant for a private office to accommodate her disability. (Obnamia Aff. ¶ 8, ECF No. 18-1.) In her first request in 2005, Plaintiff indicated that the office was necessary because her condition causes her to speak loudly, which disturbs her coworkers and threatens patient confidentiality. *Id.* Plaintiff submitted another request in 2006, reiterating her concern that her disability was disturbing her coworkers. (Obnamia Aff. Ex. 2, ECF No. 18-1.) She stated that an office was necessary "so that any louder noises [she] might be guilty of making will not distract or upset [her] colleagues and co-workers." *Id.*

Although Defendant did not provide Plaintiff a private office to accommodate her disability, it ultimately provided one in late 2006 to ensure her safety after a coworker assaulted her while she had her back turned and did not hear the person approaching. (Obnamia Aff. ¶ 9, ECF No. 18-1; Obnamia Dep. 49:11-12, ECF No. 15-1.) Plaintiff remained in the private office until eight months later when Defendant moved its operation to a new facility.

At the new facility, Defendant assigned Plaintiff to a private office, but it did not have a window. *Id.* As a result of not being able to see outside, Plaintiff avers that she became very ill and ultimately had to miss three weeks of work. *Id.* at ¶ 10. When she returned to work, Defendant provided Plaintiff a private office with a window.

Within a few months, however, Defendant assigned two employees to share the office with Plaintiff. According to Plaintiff, soon thereafter "the problems communicating and hearing

2

resurfaced." *Id.* at ¶ 11. Thus, in 2008, Plaintiff renewed her request for a private office. (Mot., Ex. B, ECF No. 15-2.) She indicated in her request form that she needed the office to increase awareness of her surroundings, decrease sensory deprivation, protect her from assaults, and decrease hostility in the workplace. *Id.* When Defendant declined to grant her request, Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC").

Plaintiff and Defendant ultimately settled the EEOC charge in late 2008. (ECF No. 15-7.) Pursuant to the settlement, Defendant agreed to permit Plaintiff to work from home as an accommodation for her disability. *Id.* at 2. Plaintiff worked from home for approximately three months before she determined that the arrangement was unworkable. According to Plaintiff, while working from home she was required to drive to the office each morning to retrieve her company vehicle so that she could drive to visit her patients, and back to the office each afternoon to drop it off. Plaintiff claims that driving to and from work to pick up the car added hours to her work day. (Obnamia Aff. ¶ 12, ECF No. 18-1.) Plaintiff also contends that her supervisor would call her into the office for trivial matters, which further added to the length of her workday. Although Plaintiff asked to keep the company vehicle at her home Monday through Friday to better manage her work-from-home status, Defendant denied her request. *Id.* at ¶ 13. Plaintiff thereafter unilaterally decided to resume working onsite.

On November 12, 2009, Plaintiff completed a Report of Contact form and submitted it to Defendant. (Mot. Ex. H, ECF No. 15-8.)[1] In that form, she requested to be moved to a vacant

---

[1] The Court notes that the documents Defendant submitted in support of its Motion for Summary Judgment have not been authenticated. Prior to the 2010 amendments to Rule 56 of the Federal Rules of Civil Procedure, the Sixth Circuit Court of Appeals routinely held that unauthenticated documents could not be used to support a motion for summary judgment. *See*, *e.g.*, *Moore v. Holbrook*, 2 F.3d 697, 698-99 (6th Cir. 1993). The amended Rule, however, allows a party making or opposing a summary judgment motion to cite to materials in the record, whether

3

private office with a window "to avoid any further discriminatory, retaliatory and harassing incidents." *Id.* In the alternative, Plaintiff requested that she be permitted to work from home with a permanent government vehicle assignment. *Id.* Defendant denied Plaintiff's requests.

Shortly after submitting the Report of Contact form, Plaintiff became dizzy at work and fell, causing her to hit her head on the hard floor. (Obnamia Aff. ¶ 15, ECF No. 18-1.) Plaintiff suffered a head injury, which required her to remain in the hospital for several days. When Plaintiff returned to work, she resumed her regular responsibilities, including driving to visit her patients. Approximately four days after she returned to work, Plaintiff amended her Report of Contact Form to include a request for handrails in the hallways near her work area. After Plaintiff submitted the request, Defendant suspended Plaintiff's driving privileges pending a medical examination confirming it was safe for Plaintiff to drive. (Obnamia Aff. ¶ 18, ECF No. 18-1; Obnamia Dep. 82:7-15, ECF No. 15-1.) Once Plaintiff submitted to the medical examination and was cleared for driving, Defendant reinstated her driving privileges. *Id.* at ¶ 19. Defendant subsequently denied Plaintiff's request for handrails. Plaintiff then filed this action, asserting claims for disability discrimination and retaliation in violation of the ADA.

## II.

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the initial

---

authenticated or not. *See* Fed. R. Civ. P. 56(c)(1)(A) (indicating that a party may cite to "depositions, documents, electronically stored information, affidavits or declarations"). If the opposing party believes that such materials "cannot be presented in a form that would be admissible in evidence," that party must file an objection." Fed. R. Civ. P. 56(c)(2). Plaintiff has not filed an objection to Defendant's reliance upon unauthenticated materials. Accordingly, the Court considers the materials in disposing of Defendant's Motion.

4

burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the court may "consider the fact undisputed for purposes of the motion").

"Once the moving party meets its initial burden, the nonmovant must 'designate specific facts showing that there is a genuine issue for trial.'" *Kimble v. Wasylyshyn*, No. 10–3110, 2011 WL 4469612, at *3 (6th Cir. Sept. 28, 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (internal quotation marks and citations omitted). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stansberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23).

Here, Defendant seeks summary judgment on Plaintiff's discrimination claims arising from her requests for a private office and handrails, as well as her retaliation claim.[1]

---

[1] Defendant also purports to seek summary judgment on a claim of hostile work environment. (Mot. 27, ECF No. 15.) Plaintiff did not assert a claim for hostile work environment in her Complaint. (Compl. ECF No. 1.) Nor did she respond to Defendants' contentions related to this purported claim in her Memorandum in Opposition to Defendant's Motion for Summary

5

**III.**

The ADA prohibits discriminating against "a qualified individual with a disability." A person is qualified under the ADA if he or she is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The Act defines discrimination to include the failure to make reasonable accommodations for the known limitations of an employee with a disability. 42 U.S.C. §§ 12112(a), 12112(b)(5)(A). The Act defines "reasonable accommodation" as follows:

(A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

(B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition of modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9). A plaintiff bringing an ADA claim for failure to accommodate "'bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable.'" *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 870 (6th Cir. 2007); (quoting *Hedrick v. W. Reserve Care Sys. & Forum Health*, 355 F.3d 444, 457 (6th Cir. 2004)). "An employer, then, has the burden of persuasion to show that an accommodation would impose

---

Judgment. (Op. ECF No. 18.) Accordingly, upon its finding that no such claim exists in this case, the Court does not consider Defendants' Motion as it relates to a purported hostile-work-environment claim. Similarly, Plaintiff purports to challenge summary judgment on a failure-to-accommodate claim rooted in Defendant's alleged failure to provide visual fire and tornado warning systems. (Op. 17, ECF No. 18.) Again, however, Plaintiff did not raise this issue in the underlying EEOC action or assert a claim arising from this alleged failure in her Complaint. Accordingly, the Court does not address Plaintiff's assertions related to Defendant's alleged failure to install visual emergency alert systems.

an undue hardship." *Hedrick*, 355 F.3d at 457. "In order for an accommodation to be reasonable, it should be necessary in light of the plaintiff's known physical limitations." *Johnson v. Cleveland City Sch. Dist.*, 344 Fed. App'x 104, 111 (6th Cir. 2009) (citing *Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 557 (6th Cir. 2008)). Furthermore, "[w]here there is more than one reasonable accommodation, the choice between accommodations is the employer's." *Smith v. Honda of Am. Mfg., Inc.*, 101 Fed. App'x 20, 25 (6th Cir. 2004); *see also Hankins v. The Gap, Inc.*, 84 F.3d 797, 800 (6th Cir. 1996) (quoting 29 C.F.R. pt. 1630, app. at 415) ("'[T]he employer providing the accommodation has the ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide.'"); *Trepka v. Bd. of Educ.,* 28 Fed. App'x. 455, 459–60 (6th Cir. 2002) ("The employer need not provide the accommodation that the employee requests or prefers. Instead, the employer retains the ultimate discretion to choose another effective accommodation."). If an employee rejects a reasonable accommodation offered by her employer "that is necessary to enable the individual to perform the essential functions of the position, . . . the individual will not be considered a qualified individual with a disability [within the meaning of the Act]." *Hankins*, 84 F.3d at 801 (citing 29 C.F.R. § 1630.9(d)).

In satisfying her duty to propose a reasonable accommodation to her employer, a plaintiff must request the accommodation and provide either actual or constructive notice that the request is linked to a disability. *See Brown v. BKW Drywall Supply, Inc.*, 305 F. Supp. 2d 814, 828 (S.D. Ohio 2004) ("A person alleging a disability protected by the ADA must establish that his employer had either actual or constructive notice of the disability."); *Russell v. Nat'l Amusements, Inc.*, No. 3:07-cv-3216, 2009 WL 262494, *13 (N.D. Ohio Feb. 4, 2009) ("By making this request, and linking it to an impairment, Russell sufficiently requested a 'reasonable

7

accommodation.'"). "Although 'an employee need not use the magic words, 'reasonable accommodation' or even 'disability,' the request does need to make it clear from the context that it is being made in order to conform with existing medical restrictions.'" *Johnson v. JPMorgan Chase & Co.*, 922 F. Supp. 2d 658, 667 (S.D. Ohio 2013) (quoting *Leeds v. Potter*, 249 Fed. App'x 442, 449 (6th Cir. 2007)).

Here, Defendant raises numerous challenges to Plaintiff's discrimination claims, including that no reasonable jury could conclude that Plaintiff's requests for accommodation were objectively reasonable. The Court agrees, and therefore finds that summary judgment is appropriate on Plaintiff's discrimination claims.[2]

### A.     Plaintiff's Request for a Private Office

In opposing Defendant's Motion for Summary Judgment, Plaintiff maintains that her request for a private office is reasonable for two reasons. First, as a result of her disability, Plaintiff speaks loudly and requires those communicating with her to do the same, which she contends distracts and "annoy[s]" anyone working in her vicinity. (Op. 3-4, ECF No. 18.) Second, Plaintiff maintains that background noises generated by her coworkers "make[] it very difficult for [her] to hear anything," which affects her ability to concentrate. *Id.* at 4.

Defendant challenges the reasonableness of Plaintiff's request for a private office on various grounds. First, Defendant points out that Plaintiff is able to perform the essential functions of her job without a private office. Indeed, Plaintiff concedes that "[a]ll of the evaluations [she] ha[s] received show fully successful performance." (Obnamia Aff. ¶ 3, ECF No. 18-1.) Relatedly, Defendant asserts that Plaintiff has failed to adduce evidence that a private

---

[2] Because this finding disposes of Plaintiff's discrimination claims, the Court need not, and does not, address Defendant's remaining challenges to these claims.

office is necessary to accommodate her disability.  None of the medical evidence Plaintiff submitted to support her requests, according to Defendant, demonstrates that a private office is necessary to accommodate her disability.

Viewing the facts in a light most favorable to her, the Court concludes Plaintiff cannot demonstrate that her request for a private office was objectively reasonable.  First, the Court of Appeals for the Sixth Circuit has held that a plaintiff cannot establish the reasonableness of a requested accommodation if she is able to perform the essential functions of her job without it:

> [The plaintiff] cites no authority for what is apparently her view that the ADA requires an employer to provide accommodations even for employees who, although disabled, are able to perform the essential functions of the job without accommodation.  Our research turns up no such authority; indeed, inasmuch as it is plaintiff's burden to demonstrate that a proposed accommodation is objectively reasonable, we think that where plaintiff is able to perform the job without accommodation, plaintiff cannot demonstrate the objective reasonableness of any desired accommodation.

*See Black v. Wayne Ctr.*, F.3d 658 (table), Nos. 99-1225, 99-1249, 225, 2000 WL 1033026, *4 (6th Cir. 2000) (internal citations omitted); *see also Core v. Champaign Cnty. Comm'rs*, No. 311-cv-166, 2012 WL 4959444, *7 (S.D. Ohio Oct. 17, 2012) (finding that the plaintiff could not demonstrate the reasonableness of a requested accommodation where she was able to perform the essential functions of the job without it).  Other Courts have held that a plaintiff's ability to perform the essential functions of her job without accommodation, although not dispositive of her claim, renders it more difficult to establish the reasonableness of the request.  *See Rauen v. U.S. Tobacco Mfg. Ltd. P'ship*, 319 F.3d 891, 897 (7th Cir. 2003) ("Tipping the scales even further against the reasonableness of Rauen's home office accommodation request is the fact that Rauen can perform all essential elements of her job without any accommodation."); *Campbell v. Wal-Mart Stores, Inc.*, 272 F. Supp. 2d 1276, 1290 (N.D. Okla. 2003) ("Generally, where an

9

employee is able to perform the essential functions of the job to which she is assigned, the duty to accommodate does not arise, even if initiated by the employee."); *Davis v. Chao*, No. 06-c-1066, 2008 WL 905184, *11 (N.D. Ill. Mar. 31, 2008) (same).

Here, Plaintiff concedes that she is able to successfully perform the essential functions of her job without a private office. (Obnamia Aff. ¶ 3, ECF No. 18-1.) Indeed, she has consistently received favorable employment reviews, despite not having a private office. *Id.* Plaintiff testified in deposition that although she performs her job successfully, she does so "under great duress," and "all of the other things that come with continued and perverse discrimination toward [her]." (Obnamia Dep. 52:12, 52:2-3, ECF No. 15-1.) Ultimately, she concedes that she can, in fact, perform the essential functions of her job without having a private office. (*Id.* at 52:10.) Nevertheless, Plaintiff provides no authority for the proposition that a requested accommodation is reasonable even though the she can perform the essential functions of her job.

Even if this Court considers Plaintiff's ability to perform the essential functions of her job as a factor in the analysis of the reasonableness of her request for an accommodation, rather than dispositive of her claim, Plaintiff still cannot demonstrate that her request for a private office was reasonable. Aside from her own testimony, which itself dispels whether a genuine issue of material fact on this issue remains for trial, Plaintiff has adduced virtually no evidence that a private office is necessary to accommodate her disability. With respect to her own testimony, Plaintiff avers that her tinnitus "in the ears is made worse by background noise," and that "whenever people are talking nearby, the background conversations make it very difficult to discern speech." (Obnamia Aff. ¶¶ 5, 7, ECF No. 18-1.) This testimony falls short of creating a genuine issue of material fact as to the reasonableness of her request, especially in light of her

10

ability to perform the essential functions of her job, and perform them well, without a private office.

The record contains three letters from medical professionals that could potentially support Plaintiff's request for a private office to eliminate background noise.[3]  In the first letter, dated October 19, 2007, a clinical audiologist indicated as follows:

> It should be noted, that even with amplification, [Plaintiff] will still have difficulty understanding speech.  This will especially be true when Ms. Obnamia is in background noise, unable to see the person with whom she is communicating, or if at a distance from the speaker.  The[refore], an FM system is also recommended.  This assistive listening device would be used in conjunction with [Plaintiff's] amplification and improves one's ability to hear in noise or across differences. . . .
>
> Additionally, Ms. Obnamia's work environment may need to be manipulated to provide the most appropriate communicative setting.  This may include positioning her desk towards traffic, allowing her face-to-face communication.

(Mot. Ex. C, ECF No. 15-3.)  A little over two years later, on January 4, 2010, the same clinical audiologist authored a letter indicating that Plaintiff received an FM system shortly after her 2007 visit.  The clinical audiologist continued with a narrative similar to that contained within her first letter:

> It should be noted, that even with amplification, [Plaintiff] will still have difficulty understanding speech.  This will especially be true when Ms. Obnamia is in background noise, unable to see the person with whom she is communicating, or if at a distance from the speaker.  Therefore, the regular use of the above FM system is strongly recommended. This assistive listening device can be used in conjunction with [Plaintiff's] amplification and should improve her ability to hear in noise or across distances. . . .

---

[3] The Court notes that Defendant, not Plaintiff, adduced the letters from the medical professionals.  Also, although Plaintiff testified in passing that she submitted medical documentation to Defendant to support her requests for accommodation, (Obnamia Dep. 36:21-25, ECF No. 15-1), she does not indicate what that medical documentation consists of, whether it includes the letters that Defendant provided in support of its Motion, or when she purportedly provided the documentation to Defendant.

11

> Additionally, Ms. Obnamia's work environment may need to be manipulated to provide the most appropriate communicative setting.  This may include positioning her desk towards co-workers or office doorway, allowing her face-to-face communication.

(Mot. Ex. E, ECF No. 15-5.)  Finally, on January 10, 2010, a physician authored a letter concerning Plaintiff's need for accommodation:

> [Plaintiff] has significant problems hearing peoples [sic] voices with background noise.  I recommend allowing Camille to work in an environment that maximizes her ability to:
> . . .
>
> 2) Communicate with coworkers face to face without background noise.  A solitary work-space would minimize the background noise and maximize her efficiency.

(Mot. Ex. F., ECF No. 15-6.)

Rather than support her position that she needs a private office to accommodate her disability, the first two letters from the clinical audiologist specifically contemplate Plaintiff working in the vicinity of others.  *See* Mot. Exs. C and E, ECF Nos. 15-3 and 15-5 ("[Accommodation] may include positioning her desk towards co-workers . . . , allowing her face-to-face communication.").  Although in each letter the clinical audiologist indicates that background noises could cause Plaintiff difficulty, she does not suggest a private office to eliminate this concern.  In fact, the clinical audiologist states in both letters that "regular use of the above FM system . . . should improve her ability to hear in noise . . . ."  (Mot. Ex. E, ECF No. 15-5.)  Furthermore, although in his January 12, 2010 letter the physician recommends a solitary work-space as one way to minimize background noise, he does not suggest that a private office is necessary to achieve this goal.

Moreover, none of Plaintiff's requests for a private office mentions a need to reduce background noise.  Rather, all of her requests purport to arise from her concern that the effects of

her disability were disturbing her coworkers, which caused tension in the workplace. (Op. Exs. 1, 2, ECF No. 18-1, Mot. Ex. B, ECF No. 15-2.) Plaintiff has provided no authority, and the Court's independent search has uncovered no precedent to support her position that the ADA requires an employer, at its employee's insistence, to provide an accommodation, not to ensure that the employee is able to perform the essential functions of her job, but to reduce tension brought on by her coworkers' purported difficulty doing their work.

Relatedly, although Plaintiff's primary consideration in requesting a private office appears to be concern over her coworkers' reactions, the reasonableness of an accommodation is viewed from the standpoint of the disabled person. *See Johnson*, 344 Fed. App'x at 111 ("In order for an accommodation to be reasonable, it should be necessary in light of *the plaintiff's* known physical limitations.") (emphasis added); *see also* 42 U.S.C. § 12112(b)(5)(A) (defining discrimination to include the failure to reasonably accommodate the known limitations of an otherwise qualified *individual with a disability*) (emphasis added); 29 C.F.R. § 1630.2(o)(1)(ii) (defining reasonable accommodation as a modifications or adjustments "that enable an individual with a disability who is qualified to perform the essential functions of that position"). Here, in light of her failure to provide authority to support her position, Plaintiff's attempt to rely on her coworkers' purported responses caused by the effects of her disability is insufficient to create a genuine issue of material fact as to the reasonableness of her request for a private office.

For the foregoing reasons, Plaintiff has failed to demonstrate that her request for a private office was objectively reasonable. Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's discrimination claim arising from her request for a private office is **GRANTED**.

**B.     Plaintiff's Request for Hand-Rails**

The Court reaches the same conclusion with respect to Plaintiff's discrimination claim arising from Defendant's failure to install handrails in the hallways near Plaintiff's work area. Plaintiff requested that Defendant install handrails in the hallways near her work area after her November 2009 fall.  (Obnamia Aff ¶ 15.)  Plaintiff cannot establish that her request for handrails was objectively reasonable.

First, as Defendant points out, Plaintiff has provided no evidence that the handrails are necessary to accommodate her disability.  *See Johnson*, 344 Fed. App'x at 111; *Nance*, 527 F.3d at 557 (noting that the reasonableness of a proposed accommodation depends in part on whether it is necessary in light of the plaintiff's limitations).  Plaintiff has submitted no medical or other evidence as to the necessity of the handrails.

Furthermore, Plaintiff attributes her fall to her inability at the time to see out of a window from her workspace and not from an absence of handrails.  In the Report of Contact form she submitted following her fall, Plaintiff indicated that she fell because she had been confined to workspace that prevented her from seeing out a window, which exacerbated her vertigo.  (Mot. Ex. H, ECF No. 15-18.).  In opposition to the instant Motion, Plaintiff again attributes the fall to lack of a window.  (Obnamia Aff. ¶15, ECF No. 18-1.)

In addition, as Defendant points out, Plaintiff's physician prescribed a cane to use to help her balance.  (Obnamia Aff ¶ 6, ECF No. 18-1.)  Plaintiff was not using her cane at the time she fell. (Obnamia Dep. 15:5-12, ECF No. 15-1.)  Plaintiff has failed to indicate how handrails would be reasonable in light of her ability to rely upon her doctor-prescribed cane to help her balance.

Accordingly, the record contains no genuine issue of material fact that Plaintiff's request for installation of handrails was objectively reasonable. Thus, Defendant's Motion for Summary Judgment as to Plaintiff's discrimination claim arising from Defendant's failure to install the handrails is **GRANTED**.

### IV.

Plaintiff also asserts a claim for retaliation in violation of the ADA. She maintains that Defendant retaliated against her immediately after and because she made a request for the handrail accommodation by suspending her driving privileges. She additionally now asserts that Defendant retaliated against her by failing to provide an accommodation of visual warning systems for fires and tornadoes. She also faults Defendant for failing to provide captioning and CART services and cites these denials as evidence of retaliation.

The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful [under the ADA], or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). "Retaliation claims are treated the same whether brought under the ADA or Title VII." *Barrett v. Lucent Techs., Inc.*, 36 Fed. App'x 835, 840 (6th Cir. 2002) (citing *Penny v. UPS*, 128 F.3d 408, 415 (6th Cir. 1997)). Thus, to establish a *prima facie* case for retaliation under the ADA, a plaintiff must establish that (1) she engaged in protected activity; (2) she thereafter suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *Penny*, 128 F.3d at 417. "If the plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to establish a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* The plaintiff bears the ultimate burden of proving that

15

"the proffered reason for the action was merely a pretext for discrimination." *Id.* (citing *Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990)).

With respect to her assertion that her employer retaliated against her by suspending her driving privileges, Defendant contends that summary judgment on this claim is appropriate because Plaintiff cannot establish that she suffered an adverse employment action. An adverse employment action is conduct that affects a "materially adverse change in the terms and conditions of employment." *Trepka v. Board of Educ.*, 28 Fed. App'x 455, 462 (6th Cir. 2002) (citing *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996)). In *Burlington N. & Santa Fe Ry Co. v. White*, the United States Supreme Court held that to demonstrate an adverse employment action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from [engaging in the protected activity]." 548 U.S. 53, 68 (2006). In assessing whether conduct rises to the level of an adverse employment action, "courts look for at least a termination of employment, a demotion in wage, salary or job title, a loss of benefits, or a decrease in responsibilities." *Trepka*, 28 Fed. App'x at 462. Generally, a limited suspension of work responsibilities for a short duration during which an employee continues to be paid does not constitute a materially adverse employment action. *See, e.g., McNeil v. U.S. Dep't of Labor*, 243 Fed. App'x 93, 101 (6th Cir. 2007) (sending employee home from work for a brief period without any loss of income did not amount to adverse employment action).

Here, Plaintiff cannot establish that Defendant subjected her to an adverse employment action by temporarily suspending her driving privileges. Plaintiff avers that Defendant prohibited her from driving after she fell as a result of vertigo and sustained a head injury. (Obnamia Aff. ¶ 19, ECF No. 18-1.) Although in her Affidavit Plaintiff indicates that the

16

suspension of her driving privileges lasted "several weeks," *id.*, in deposition she testified that it lasted less than a week. (Obnamia Dep. 82:13-15, ECF No. 15-1.) In all events, once a medical professional cleared Plaintiff for driving, Defendant reinstated her driving duties. *Id.* Plaintiff has provided no other evidence or indication that Defendant suspended her from any other responsibilities. Moreover, she continued to be paid. Nor does the record indicate that Defendant demoted Plaintiff to a different position, decreased her salary, changed her benefits, altered her job title, or otherwise imposed a recognized adverse action against her. *Trepka*, 28 Fed. App'x at 462. Other than contending vaguely that the temporary prohibition on driving "was a significant issue since I drive in my job every day," (Obnamia Aff. ¶18, ECF No. 181), Plaintiff fails to demonstrate how the brief suspension pending medical clearance adversely affected the terms and conditions of her employment.

Nor can Plaintiff establish that Defendant's legitimate nondiscriminatory reason for the brief suspension in driving privileges is a pretext for retaliation. Defendant contends that it temporarily suspended Plaintiff's driving privileges for safety reasons after Plaintiff experienced a severe fall as a result of vertigo. According to Plaintiff's deposition testimony, Defendant informed Plaintiff that she could resume driving once a doctor indicated it would be safe for her to do so. (Obnamia Dep. 82:13-15, ECF No. 15-1.) When Plaintiff submitted the doctor's clearance, Defendant reinstated her driving privileges. *Id.*; Obnamia Aff. ¶19, ECF No. 18-1. Plaintiff emphasizes that the driving suspension came immediately upon the heels of her request for handrails. Plaintiff has provided virtually no evidence other than temporal proximity to rebut Defendant's legitimate nondiscriminatory reason for the brief suspension in driving privileges. *See Asmo v. Keane, Inc.*, 471 F.3d 588, 598 (6th Cir. 2006) (noting that temporal proximity alone

17

cannot prove pretext); *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 317 (6th Cir. 2001) (holding that temporal proximity, without more, it is insufficient to establish pretext).

Plaintiff, for the first time in her Memorandum in Opposition, asserts that Defendant retaliated against her by refusing to provide visual fire and tornado warning systems, as well as captioning and CART services. She contends that Defendant's "obstinate refusal to provide requested reasonable accommodation[s]" is evidence of retaliatory conduct. (Op. 20, ECF No. 18.) Plaintiff, however, did not raise these issues in the underlying EEO action. Plaintiff, however, may not raise new allegations that have not been the subject of discovery in this case for purposes of opposing a properly supported Motion for Summary Judgment. *Priddy v. Edelman,* 883 F.2d 438, 446 (6th Cir. 989) ("A party is not entitled to wait until the discovery cutoff date has passed and a motion for summary judgment has been filed on the basis of claims asserted in the original complaint before introducing entirely different legal theories . . . ."); *see also Yanovich v. Zimmer Austin, Inc.*, 255 Fed. App'x 957, 970 (6th Cir. 2007) (precluding the plaintiff from raising new legal theories in her response to summary judgment motion. Because Plaintiff raised these theories of liability for the first time in her brief opposing Defendant's Motion for Summary Judgment, the Court will not consider them.

Accordingly, no genuine issue of material fact exists that Defendant retaliated against Plaintiff for exercising her rights under the ADA. Defendant's Motion for Summary Judgment on Plaintiff's retaliation claim is, therefore, **GRANTED**

## V.

For the reasons set forth herein, Defendant's Motion for Summary Judgment (ECF No. 15) is **GRANTED**. The Clerk is **DIRECTED** to enter judgment in favor of Defendant and to remove this case from the Court's active cases list.

**IT IS SO ORDERED.**


Date:  September 25, 2013              */s/ Elizabeth A. Preston Deavers*
                                                      **ELIZABETH A. PRESTON DEAVERS**
                                                      **UNITED STATES MAGISTRATE JUDGE**